Citation Nr: 1508830 
Decision Date: 02/27/15 Archive Date: 03/11/15

DOCKET NO. 08-17 718 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Providence, Rhode Island


THE ISSUES

1. Entitlement to a rating in excess of 50 percent for posttraumatic stress disorder (PTSD). 

2. Entitlement to a rating in excess of 10 percent for degenerative joint disease (DJD) of the left shoulder. 

3. Entitlement to a rating in excess of 10 percent for residuals of a fractured distal nares.

4. Entitlement to service connection for sinusitis, to include as secondary to residuals of a fractured distal nares.

5. Entitlement to a total disability rating due to individual employability resulting from service-connected disability (TDIU).




REPRESENTATION

Veteran represented by: Michael James Kelley, Esq.


WITNESS AT HEARING ON APPEAL

Veteran


ATTORNEY FOR THE BOARD

M. Riley, Counsel 


INTRODUCTION

The Veteran served on active duty from March 1986 to December 1987. This matter comes before the Board of Veterans' Appeals (Board) on appeal from October 2007 and August 2011 rating decisions by the Department of Veterans' Affairs (VA) Regional Office (RO) in Providence, Rhode Island. 

The Veteran testified before the undersigned Acting Veterans Law Judge (AVLJ) at a November 2014 videoconference hearing. She also testified before a different AVLJ in August 2010. Transcripts of both hearings are associated with the record.
The AVLJ who conducted the August 2010 hearing is no longer employed at the Board. The Veteran was provided the opportunity to request a new hearing in a January 2012 letter in accordance with 38 C.F.R. § 20.707. The Veteran did not respond within the 30 day time period and a new hearing was not provided on this basis.

In February 2011, the Board remanded the increased rating claims for further development. The claims returned to the Board and in April 2012, the Board issued a decision. Pursuant to a settlement agreement in the case of National Org. of Veterans' Advocates, Inc. v. Secretary of Veterans Affairs, 725 F. 3d 1312 (Fed. Cir. 2013), the Board's April 2012 decision was identified as having been potentially affected by an invalidated rule relating to the duties of the AVLJ that conducted the August 2010 videoconference hearing. In order to remedy any such potential error, the Board sent the Veteran a letter notifying her of an opportunity to receive a new hearing and/or a new decision from the Board. In an October 2013 response, the Veteran requested to have a second hearing and to have the prior decision vacated and a new one issued in its place. The April 2012 Board decision was vacated in June 2014 pursuant to the Veteran's request, and the new hearing was conducted in November 2014. The case has again returned to Board and the claims for increased ratings are joined by additional claims for entitlement to service connection for sinusitis and entitlement to TDIU. 

At the time of the November 2014 hearing, the record was held open for 30 days to allow for the submission of additional evidence. This time period has passed without the submission of additional evidence. As noted below, the attorney-representative noted that the benefit sought was a 70 percent rating for the service-connected PTSD and the additional evidence pertained to this issue. The below decision grants the requested 70 percent rating. 

The issues of entitlement to service connection for sinusitis and entitlement to TDIU are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. In November 2014, prior to the promulgation of a decision in the appeal, the Board received notification from the appellant that a withdrawal of the appeal for an increased rating for residuals of a fractured distal nares is requested. 

2. The Veteran's PTSD most nearly approximates deficiencies in most areas of work, school, family relationships, thinking, judgment, and mood without total occupational and social impairment.

3. The Veteran's DJD of the left shoulder is manifested by arthritis and range of motion to 120 degrees; it is not manifested by occasional incapacitating exacerbations or limitation of motion of the arm at shoulder level, impairment of the clavicle, recurrent dislocations, or neurological impairment of the left upper extremity.

CONCLUSIONS OF LAW

1. The criteria for withdrawal of the appeal for entitlement an increased rating for residuals of a fractured distal nares by the appellant have been met. 38 U.S.C.A. § 7105(b)(2), (d)(5) (West 2014); 38 C.F.R. § 20.204 (2014).

2. The criteria for a 70 percent disability rating, but not higher, for PTSD have been met. 38 U.S.C.A. § 1155; 38 C.F.R. §§ 4.7, 4.130, Diagnostic Code 9411.

3. The criteria for an increased rating in excess of 10 percent for DJD of the left shoulder, minor, have not been met. 38 U.S.C.A. §§ 1155; 38 C.F.R. §§ 3.321, 4.1, 4.2, 4.7, 4.10, 4.14, 4.40, 4.45, 4.71a, Diagnostic Codes 5003, 5010, 5201, 5202, 5203.


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Withdrawn Claim

The Board may dismiss any appeal which fails to allege specific error of fact or law in the determination being appealed. 38 U.S.C.A. § 7105 (West 2014). An appeal may be withdrawn as to any or all issues involved in the appeal at any time before the Board promulgates a decision. 38 C.F.R. § 20.204 (2014). Withdrawal may be made by the appellant or by his or her authorized representative. 38 C.F.R. § 20.204. At the November 2014 hearing, the appellant withdrew the appeal for entitlement to an increased rating for residuals of a fractured distal nares. Hence, there remain no allegations of errors of fact or law for appellate consideration. Accordingly, the Board does not have jurisdiction to review the appeal with respect to this claim and it is dismissed.


Increased Rating Claims

Disability evaluations are determined by comparing a Veteran's present symptomatology with criteria set forth in VA's Schedule for Rating Disabilities (Rating Schedule), which is based on average impairment in earning capacity. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. When a question arises as to which of two ratings apply under a particular diagnostic code, the higher evaluation is assigned if the disability more closely approximates the criteria for the higher rating. 38 C.F.R. § 4.7. After careful consideration of the evidence, any reasonable doubt remaining is resolved in favor of the Veteran. 38 C.F.R. § 4.3.

The Veteran's entire history is reviewed when making disability ratings. See generally 38 C.F.R. 4.1; Schafrath v. Derwinski, 1 Vet. App. 589 (1995). Where entitlement to compensation has already been established and an increase in the disability rating is at issue, the present level of disability is of primary concern. Although a rating specialist is directed to review the recorded history of a disability in order to make a more accurate evaluation, see 38 C.F.R. § 4.2, the regulations do not give past medical reports precedence over current findings. Francisco v. Brown, 7 Vet. App. 55 (1994). Staged ratings are, however, appropriate for an increased rating claim when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. The relevant focus for adjudicating an increased rating claim is on the evidence concerning the state of the disability from the time period one year before the claim was filed until VA makes a final decision on the claim. Hart v. Mansfield, 21 Vet. App. 505 (2007).



PTSD

Service connection for PTSD was awarded in a July 2005 rating decision with an initial 50 percent evaluation assigned effective December 17, 2003. The October 2007 rating decision on appeal continued the 50 percent rating. The Veteran contends that an increased rating is warranted as her PTSD affects all areas of functioning and her treating physicians have indicated impairment more severe than that contemplated by a 50 percent rating. In the Board hearing before the undersigned, the attorney-representative specifically noted that the Veteran was seeking a 70 percent rating.

When evaluating a mental disorder, the rating agency shall consider the frequency, severity, and duration of psychiatric symptoms, the length of remissions, and the veteran's capacity for adjustment during periods of remission. The rating agency shall assign an evaluation based on all the evidence of record that bears on occupational and social impairment rather than solely on the examiner's assessment of the level of disability at the moment of the examination. 38 C.F.R. § 4.126(a).

The Veteran's PTSD is currently evaluated as 50 percent disabling under Diagnostic Code 9411, in accordance with the General Rating Formula for Mental Disorders. See 38 C.F.R. § 4.130. Under the general rating formula, a 50 percent rating is warranted for occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to compete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships. 38 C.F.R. § 4.130, Diagnostic Code 9411.

A 70 percent evaluation is warranted for occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine actives; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); inability to establish and maintain effective relationships. Id.

A maximum 100 percent evaluation is warranted for total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. Id.

After review of the evidence of record, the Board finds that the Veteran's PTSD most nearly approximates an increased 70 percent evaluation throughout the claims period. The criteria for a 70 percent rating are met if there are deficiencies in most of the areas of work, school, family relations, judgment, thinking, and mood. Bowling v. Principi, 15 Vet. App. 1, 11-14 (2001). The March 2011 VA examiner specifically found that the Veteran's PTSD has affected her work, family relations, judgment, and mood. Treatment records from the Boston VA Medical Center (VAMC) and VA examination reports also document an anxious and/or depressed mood, as well as concentration and memory problems and deficient judgment characterized as ongoing problems with drinking and gambling. 

The Veteran's PTSD also clearly impacts her ability to work and socialize. The July 2007 VA examiner characterized the Veteran's PTSD symptoms as having a moderate to major impact on employment and significant interference with social functioning. The Veteran was able to obtain a nursing degree, but was forced to resign from her previous position as a police officer due to problems with her supervisor and peers. She also testified in November 2014 and August 2010 that she has no friends and experiences anxiety in social situations. She remains close to her family, but often feels irritation, a loss of temper, and anxiety when spending time with them. She has not had a significant personal relationship in several years and has a history of abusive relationships. It is therefore clear that the service-connected PTSD has caused deficiencies in most of the areas of work, school, family relations, judgment, thinking, and mood. 

The Veteran's Global Assessment of Functioning (GAF) scores also establish the presence of PTSD symptoms that most nearly approximate severe and a 70 percent rating. According to the Fourth Edition of the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) (adopted by VA at 38 C.F.R. §§ 4.125 and 4.126 (2014)), a GAF is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." The Veteran's GAF scores throughout the claims period have typically ranged from 43 to 53, consistent with serious to moderate symptoms. GAF scores associated with severe symptomatology were consistently recorded by her treating VA psychiatrists during the claims period and she was noted on multiple occasions to experience significant PTSD symptoms that affect all areas of her life and functioning. 

The Veteran's PTSD is therefore properly evaluated as 70 percent disabling throughout the claims period. The Board has considered whether a total schedular rating is appropriate; a 100 percent rating is assigned if the PTSD causes total occupational and social impairment, regardless of whether the Veteran has some, all, or none of the symptoms listed in the rating formula, and regardless of whether the symptoms are listed in the Rating Schedule. See Mauerhan v. Principi, 16 Vet App 436, 442-3 (2002); see also Sellers v. Principi, 372 F.3d 1318, 1326 (Fed. Cir. 2004). In this case, the Board cannot conclude that the Veteran's PTSD has resulted in total occupational and social impairment. She currently works as a nurse and the March 2011 VA examiner concluded that she was not unable to work due to PTSD. Additionally, while the Veteran's PTSD clearly causes severe social impairment, she remains close with her family and does not present with total social impairment. Thus, the Board concludes that the Veteran's PTSD symptoms, while severe, are clearly not of similar severity, frequency, and duration as those contemplated by a 100 percent rating. See Vazquez-Claudio v. Shinseki, 713 F.3d 112, 117 (Fed. Cir. 2013). The Board therefore finds that the Veteran's PTSD most nearly approximates a 70 percent schedular evaluation throughout the claims period.

The Board has considered whether there is any other schedular basis for granting a higher rating other than that discussed above, but has found none. In addition, the Board has considered the doctrine of reasonable doubt but has determined that it is not applicable because the preponderance of the evidence is against a schedular rating higher than 70 percent for PTSD. 38 U.S.C.A. § 5107(b); 38 C.F.R. §§ 4.7, 4.21.

Left Shoulder

Service connection for DJD of the left clavicle was granted in a May 2004 rating decision. An initial noncompensable evaluation was assigned effective December 17, 2003. The current 10 percent evaluation was granted in a July 2005 rating decision also effective December 17, 2003 and the disability was recharacterized as DJD of the left (minor) shoulder. The October 2007 rating decision on appeal continued the 10 percent evaluation. The Veteran contends that a higher or separate rating is warranted as her left shoulder disability manifests neurological impairment of the left arm. 

The Veteran's left shoulder disability is currently rated as 10 percent disabling in accordance with 38 C.F.R. § 4.71a , Diagnostic Code 5010. Diagnostic Code 5010 provides for rating arthritis due to trauma as degenerative arthritis under Diagnostic Code 5003. Under Diagnostic Code 5003, a 10 percent evaluation is assigned for each major joint or group of minor joints when the limitation of motion of the specific joint or joints involved is noncompensable under the appropriate diagnostic codes. Limitation of motion must be objectively confirmed by findings such as swelling, muscle spasm, or satisfactory evidence of painful motion. A 20 percent evaluation is possible with X-ray evidence of involvement of two or more major joints or two or more minor joint groups with occasional incapacitating exacerbations. 

For the purpose of rating disability from arthritis, the shoulder, elbow, wrist, hip, knee, and ankle are considered major joints; multiple involvements of the interphalangeal, metacarpal and carpal joints of the upper extremities, the interphalangeal, metatarsal and tarsal joints of the lower extremities, the cervical vertebrae, the dorsal vertebrae, and the lumbar vertebrae, are considered groups of minor joints, ratable on a parity with major joints. 38 C.F.R. § 4.45(f) . 

The Board notes that additional diagnostic criteria for the shoulder are in Diagnostic Codes 5200-5203. 

Under 38 C.F.R. § 4.71a, Diagnostic Code 5200, ankylosis of the scapulohumeral articulation (which moves as one piece), when in a favorable position, with abduction to 60 degrees, and ability to reach the mouth and head is retained, a 30 percent evaluation is warranted for the major extremity and 20 percent for the minor extremity. When in an intermediate position between favorable and unfavorable, 40 percent is warranted for the major extremity and 30 percent for the minor extremity. Under Diagnostic Code 5201, limitation of an arm at the shoulder level warrants a 20 evaluation whether it is the major or minor extremity. When motion is limited to midway between the side and shoulder level, a 30 percent evaluation is warranted for the major extremity and 20 percent for the minor extremity. When motion is limited to 25 degrees from the side, a 40 percent evaluation is warranted for the major extremity and 30 percent for the minor extremity. 

Under 38 C.F.R. § 4.71a , Diagnostic Code 5202, a 20 percent is warranted for impairment of the humerus, regardless of whether the major or minor extremity is affected, when there is either malunion with moderate deformity or when there are recurrent dislocations of the scapulohumeral joint which are infrequent and there is guarding of movement only at the shoulder level. For the next higher rating in excess of 20 percent for impairment of the humerus, of 40 percent there must be fibrous union. 

Diagnostic Code 5203 provides ratings for other impairment of the clavicle or scapula. Malunion of the clavicle or scapula is rated as 10 percent for the major shoulder and 10 percent for the minor shoulder. Nonunion of the clavicle or scapula without loose movement is rated as 10 percent for the major shoulder and 10 percent for the minor shoulder; nonunion of the clavicle or scapula with loose movement is rated as 20 percent for the major shoulder and 20 percent for the minor shoulder. Dislocation of the clavicle or scapula with loose movement is rated as 20 percent for the major shoulder and 20 percent for the minor shoulder. Diagnostic Code 5203 provides an alternative rating based on impairment of function of the contiguous joint. 38 C.F.R. § 4.71a . 

Normal flexion (forward elevation of the arm) and normal abduction (movement of the arm away from the side) of the shoulder are to 180 degrees. Normal internal rotation and external rotations of the shoulder are to 90 degrees. 38 C.F.R. § 4.71, Plate 1. 

Ankylosis is immobility and consolidation of a joint due to disease, injury or surgical procedure. Lewis v. Derwinski, 3 Vet. App. 259 (1992) (memorandum decision); Nix v. Brown, 4 Vet. App. 462, 465 (1993); and Shipwash v. Brown, 8 Vet. App. 218, 221 (1995). Ankylosis is stiffening or fixation of a joint as the result of a disease process, with fibrous or bony union across the joint. Dinsay v. Brown, 9 Vet. App. 79, 81 (1996). 

Disability of the musculoskeletal system is primarily the inability, due to damage or inflammation in parts of the system, to perform normal working movements of the body with normal excursion, strength, speed, coordination and endurance. Functional loss may be due to pain supported by adequate pathology and evidenced by visible behavior of the claimant undertaking the motion. 38 C.F.R. § 4.40 .

The factors of disability affecting joints are reduction of normal excursion of movements in different planes, weakened movement, excess fatigability, swelling and pain on movement. 38 C.F.R. § 4.45. The Board notes that VA may, in addition to applying schedular criteria, consider granting a higher rating in cases in which the claimant experiences additional functional loss due to pain, weakness, excess fatigability, or incoordination, to include with repeated use during flare-ups, and those factors are not contemplated in the relevant rating criteria. See 38 C.F.R. §§ 4.40, 4.45; DeLuca v. Brown, 8 Vet. App. 202, 204-7 (1995). 

At the Veteran's August 2007 VA examination she reported a constant aching and throbbing pain specifically at the soft tissue surrounding the posterior clavicle area. She reported that the pain radiated to the lateral side of the shoulder and she experienced associated tingling to her left little and ring fingers. On examination there was no redness or locking noted to her left shoulder. Her range of motion for forward flexion was from 0 degrees to 160 degrees with end point pain; her range of motion for abduction was 0 degrees to 150 degrees with end point pain; her extension was 0 degrees to 15 degrees with end point pain; her external rotation was 0 degrees to 90 degrees; and her internal rotation was 0 degrees to 80 degrees. After repetitive use testing, including holding a five pound weight, her range of motion for forward flexion was from 0 degrees to 150 degrees and there was no weakness, fatigue, or lack of endurance. The Veteran's muscle strength for her upper extremities was 5 out of 5 and neurological examination was normal. It was further noted that her x-ray radiologist reported mild to moderate degenerative joint disease in the acromioclavicular joint of her left shoulder. 

At the Veteran's March 2011 VA examination it was noted that there was no history of surgery or known fractures or dislocations. She reported persistent left shoulder pain since the injury and claimed to have constant left shoulder pain exacerbated by range of motion, reaching, lifting and carrying, and cold and damp weather exposure. She was on ibuprofen as described by her doctor. There was no evidence of deformity, giving way, instability, incoordination, episodes of dislocation or subluxation, locking episodes, tenderness, or flare-ups; however, there was pain, stiffness, weakness, decreased speed of joint motion, and swelling and tenderness. Her range of motion for flexion was 0 degrees to 120 degrees, abduction was 0 degrees to 110 degrees, internal rotation was 0 degrees to 50 degrees, external rotation was 0 degrees to 65 degrees. It was noted that there was objective evidence of pain with active motion but there was no additional limitations after three repetitions of range of motion and there was no joint ankylosis. An x-ray study revealed no acute fracture, dislocation, or significant degenerative changes identified. It was noted that the Veteran had problems with lifting, carrying, and reaching. There was mild effect on feeding, toileting, and grooming; moderate effect on her chores, shopping, traveling, bathing, dressing, and driving; severe effect on exercise and recreation; and she was prevented from doing sports. 

In this case, an increased rating is warranted for the Veteran's DJD of the left shoulder if the evidence establishes: 1) the absence of limitation of motion, and x-ray evidence of involvement of two or more major joints or two or more minor joint groups, with the addition of occasional incapacitating exacerbations (Diagnostic Code 5010); 2) ankylosis of the scapulohumeral articulation when in a favorable position, with abduction to 60 degrees, and ability to reach the mouth and head (Diagnostic Code 5200); 3) limitation of arm motion at the shoulder level (Diagnostic Code 5201); 4) impairment of the humerus, regardless of whether the major or minor extremity is affected, when there is either malunion with moderate deformity or when there are recurrent dislocations of the scapulohumeral joint which are infrequent and there is guarding of movement only at the shoulder level (Diagnostic Code 5202); or 5) nonunion of the clavicle or scapula with loose movement or dislocation of the clavicle or scapula with loose movement (Diagnostic Code 5203).

After a careful review of the record, the Board finds that an increased rating in excess of 10 percent for DJD of the left shoulder is not warranted. First, the Board notes that the Veteran's range of motion at the March 2011 VA examination was measured to 0 degrees to 120 degrees for flexion and 0 degrees to 110 degrees for abduction; thus, there is no evidence of ankylosis or limitation of the arm at the shoulder level (Diagnostic Codes 5200 and 5201). At both VA examinations there was no medical evidence of a diagnosis of dislocations and the record is entirely negative for findings of nonunion or malunion or other impairment of the clavicle and/or scapula (Diagnostic Codes 5202 and 5203). Finally, while the Veteran does have X-ray evidence and some troubles with activities of daily living, there is no evidence of occasional incapacitating exacerbations. The Veteran also denied experiencing flare-ups at her VA examinations (Diagnostic Code 5010). Thus, the Veteran's DJD of the left shoulder does not warrant an increased rating in excess of 10 percent based on the criteria for evaluating the shoulder. 

VA must also consider the effect of pain and weakness when rating a service-connected disability on the basis of limitation of range of motion. See DeLuca, supra. While the Veteran reported pain and trouble with lifting and carrying, the evidence shows that the Veteran's range of motion measured, in degrees, above shoulder level; this same finding was also demonstrated at her examinations after repetitive of motion holding a weight. Thus, the Board finds that the currently assigned 10 percent rating contemplates any pain on limitation of motion and does not warrant an additional rating under DeLuca even with consideration of all relevant functional factors.

The Veteran testified in November 2014 that she experiences neurological impairment, including numbness and radiating pain down her left upper extremity, due to her left shoulder DJD. She contends that a separate rating is warranted for this aspect of the disability. The evaluation of the same disability under different diagnoses is prohibited by VA regulations; however, any neurological manifestation of the Veteran's service-connected disability would constitute symptoms that are separate and distinct from those contemplated by the diagnostic codes used to rate arthritis and impairment of the shoulder. See 38 C.F.R. § 4.14; Esteban v. Brown, 6 Vet. App. 259 (1994). While a separate rating is therefore possible for the Veteran's reported neurological impairment, the evidence establishes that the Veteran's complaints of numbness and radiating pain in the left arm are due to a nonservice-connected cervical spine condition. 

VA and private clinical records document treatment and surgery for cervical stenosis, disc herniation, and associated left arm radiculopathy. In April 2003, the Veteran's orthopedist diagnosed C5-6 and C6-7 disc herniation with left cervical radiculopathy. A MRI conducted two months later confirmed the disc herniations and left root nerve impingement. Cervical spine decompression and fusion surgery was performed in November 2003 and the Veteran has continued to report cervical and left arm pain since that time. The objective medical evidence clearly establishes that the Veteran's neurological impairment of the left arm is due to a nonservice-connected cervical spine disability. The Board finds that the medical evidence outweighs the Veteran's lay testimony linking her neurological symptoms to service-connected left shoulder DJD. See Jandreau v. Nicholson, 492 F.3d 1372, 1376-1377 (Fed. Cir. 2007); Buchanan v. Nicholson, 451 F.3d 1131, 1336 (Fed. Cir. 2006). Thus, a separate or increased rating is not warranted for the left shoulder DJD based on neurological impairment of the left upper extremity.

In sum, the Board finds that while the Veteran has DJD of the left shoulder there is no evidence of occasional incapacitating exacerbations, limitation of the arm at shoulder level, ankylosis of the shoulder, or any dislocations related to the shoulder. The Veteran's complaints of numbness and radiating pain in the left arm are also not associated with the service-connected shoulder disability. Thus, a rating in excess of 10 percent for DJD of the left shoulder is not warranted.


Other Considerations

In exceptional cases an extraschedular rating may be provided. 38 C.F.R. § 3.321. The Court of Appeals for Veterans Claims (Court) has set out a three-part test, based on the language of 38 C.F.R. § 3.321(b)(1), for determining whether a veteran is entitled to an extra-schedular rating: (1) the established schedular criteria must be inadequate to describe the severity and symptoms of the claimant's disability; (2) the case must present other indicia of an exceptional or unusual disability picture, such as marked interference with employment or frequent periods of hospitalization; and (3) the award of an extra-schedular disability rating must be in the interest of justice. Thun v. Peake, 22 Vet. App. 111 (2008), aff'd, Thun v. Shinseki, 572 F.3d 1366 (Fed. Cir. 2009). 

The Board finds that the rating criteria contemplate the Veteran's disabilities. The Veteran's PTSD is manifested by serious impairment to occupational and social functioning and her left shoulder disability manifests painful limitation of motion. These manifestations are contemplated in the rating criteria and the rating criteria are therefore adequate to evaluate the Veteran's disabilities. In addition, the record does not indicate that the Veteran manifests an additional disability that is attributable to the combined effect of her multiple service-connected conditions. See Johnson v. McDonald, 2013-7104, 2014 WL 3562218 (Fed. Cir. Aug. 6, 2014). As the Veteran's conditions are contemplated by the rating criteria, a referral for consideration of an extraschedular rating is not warranted. The record also does not demonstrate an exceptional circumstance where the evaluation of the condition fails to capture all the symptoms of the service-connected disability. Id.


Duties to Notify and Assist

VA has certain duties to notify and assist a claimant in the development and substantiation of a claim. VA must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; (3) and that the claimant is expected to provide. Pelegrini v. Principi (Pelegrini II), 18 Vet. App. 112, 120-21 (2004), see 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b).

In this case, notice fulfilling the requirements of 38 C.F.R. § 3.159(b) was furnished to the Veteran in an October 2007 letter. The Veteran also received notice regarding the disability-rating and effective-date elements of the claim in the October 2007 letter. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). 

VA is also required to make reasonable efforts to help a claimant obtain evidence necessary to substantiate a claim. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159(c), (d). This "duty to assist" contemplates that VA will help a claimant obtain records relevant to a claim, whether or not the records are in Federal custody, and that VA will provide a medical examination or obtain an opinion when necessary to make a decision on the claim. 38 C.F.R. § 3.159(c)(4). 

The Veteran was provided VA examinations to determine the current severity of her PTSD and left shoulder disability in March 2011. She testified in November 2014 that her disabilities had not worsened since the 2011 examinations and the record contains no other evidence indicating a change in the Veteran's conditions. The Board therefore finds that the duty to assist does not require a remand for additional VA examinations. 

All relevant evidence necessary for an equitable resolution of the issues herein decided have been identified and obtained, to the extent possible. The evidence of record includes private medical records, VA outpatient treatment reports, VA examinations, and statements and testimony from the Veteran and the statements of the attorney-representative. The Veteran has not indicated that she has any further evidence to submit to VA, or which VA needs to obtain. There is no indication that there exists any additional evidence that has a bearing on this case that has not been obtained. The Veteran and her attorney-representative have been accorded ample opportunity to present evidence and argument in support of her appeal. 

For the reasons set forth above, the Board finds that VA has complied with its notification and assistance requirements.


ORDER

The claim for entitlement to a rating in excess of 10 percent for residuals of a fractured distal nares is dismissed.

Entitlement to a rating of 70 percent, but not higher, for PTSD is granted, subject to governing criteria applicable to the payment of monetary benefits.

Entitlement to a rating in excess of 10 percent for DJD of the left shoulder is denied. 


REMAND

The Board is cognizant that the attorney clarified that the above issues were the only ones in appellate status at the time of the November 2014 hearing and that the April 2012 Board decision (subsequently vacated) only addressed these issues. The Board also acknowledges that the attorney specifically noted at the hearing that the Veteran was not currently contending that she was unemployable due to her service-connected PTSD, as she was employed. Thus, the issue of TDIU as part of the service-connected PTSD has not been raised. See Rice v. Shinseki, 22 Vet. App. 447 (2009). Despite this, the Board must react to the procedural history before it. In this regard, the Veteran filed a substantive appeal in November 2011 perfecting the appeals for entitlement to service connection for sinusitis and entitlement to TDIU. The substantive appeal included a request for a videoconference hearing. The Veteran attended a hearing with the undersigned AVLJ in November 2014, but the claims for service connection for sinusitis and TDIU were not addressed. The Veteran is entitled to a hearing before the Board on these issues. 38 C.F.R. §§ 20.700, 20.703 (2014). Therefore, the requested hearing should be scheduled. 

Accordingly, the case is REMANDED for the following action:

Schedule the Veteran for a videoconference hearing before a Veterans Law Judge at the RO regarding the claims for entitlement to service connection for sinusitis and entitlement to TDIU. After the Veteran has been afforded the opportunity for a hearing, the case should be returned to the Board in accordance with appellate procedures.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



______________________________________________
Nathaniel J. Doan
Acting Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs